UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2005 JUN -9  A 11: 49

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| DANIEL MINTZ, ANDREA WINTER, | ) | |
| JAMES BIANCOLO AND SANDRA BIANCOLO, | ) | |
| ANN PHILLIPS, STEVEN BAUM, | ) | |
| CAROL WINSTON, VERNON KOHLENBERGER | ) | |
| AND DONNA KOHLENBERGER, | ) | |
| LAWRENCE WOLFE AND PAMELA WOLFE, | ) | |
| CRAIG PEHLERT AND MELISSA PEHLERT | ) | |
| AND ROBERT HACKMANN AND | ) | |
| JANE HACKMANN, | ) | |
|       Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-10809-MAP |
| | ) | |
| THE ROMAN CATHOLIC BISHOP OF | ) | |
| SPRINGFIELD, THOMAS L. DUPRE, BISHOP; | ) | |
| ARLENE D. SCHIFF, CLIFFORD SNYDER, | ) | |
| HAROLD BROWN, JEFF HALL AND | ) | |
| NED DOUGLAS AND EDWIN MAY, | ) | |
|       Defendants | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

STATEMENT OF FACTS

The defendant, the Roman Catholic Bishop of Springfield (RCB)[1],  is the owner of land

in Lenox which contains a church and a rectory known as St. Ann's Parish.  The property is

located near the center of town in Lenox in an area zoned R-15 (residential, with a minimum lot

size of 15,000 sq. ft. *Town of Lenox Zoning Bylaw (LZB) §3.6 (Exh. 1).*  It is immediately

---

[1]The Roman Catholic Bishop of Springfield, a corporation sole (RCB), is an entity
created by legislative act as a corporation sole, *Acts* 1898, *Chap. 368.*  RCB is the sole owner of
the real estate in question.  Thomas Dupree is a former Bishop of Springfield (and was at the
time the complaint was filed) who has no ownership interest in the property.  St. Ann Parish is
part of the RCB and not a separate legal entity.

adjacent to the town's main commercial district. A religious use is a permitted use within the zone. *Exh. 1, LZB, Table 6.6-1.* The site plan shows the location of the church and rectory on the St. Ann property, as well as the proposed location of the parish hall. (Complaint, Exh. C)

For years St. Ann's Parish had desired to build a parish hall. The other churches in Lenox have a parish hall (Exh. 2, pp. 129-131). St. Ann needs additional space for several reasons. Presently, almost all of the administration functions of the church are squeezed into a rectory intended as a residence for priests (Exh. 2, pp. 32-36). The rectory presently includes three offices for the pastor, administrative assistant and director of religious education (Exh. 2, pp. 24-25, 59-60). The rectory presently holds parish council meetings, finance council meetings, RCIA meetings (Right of Christian Initiation-Catechism for Adults), CCD council meetings and planning meetings (Exh. 2, pp. 32-36). These meetings are held in the living room, dining room and kitchen of the residence (Exh. 2, pp. 32-36). The Director of Religious Education has an office on the second floor in a former bedroom next to the other bedrooms (Exh. 2, pp. 59-60). Parish council meetings often must be held at an outside location because of the size of the council (Exh. 2, pp. 32-34). Essentially, the church is presently run out of a house. The new parish hall would provide space for these functions. The parish hall is also needed for other functions such as small group gatherings after baptisms, funerals and other social functions. The proposed hall has a capacity for 150 people (Complaint, Exh. A, para. 13). The building would contain about 3,370 square feet of space (Complaint, Exh. A, para. 12).

Standing in the way of the church's desire for the parish hall was the Town of Lenox Zoning Bylaw, in particular §9.18 (Exh. 1, §9.18). That section contains special provisions only applicable to religious and private educational uses. It provides:

2

Any non-municipal educational use or any religious use is subject to the following regulations:

(a)    Maximum building height - 2 stories or 35 feet.
(b)    Maximum building coverage - 4%
(c)    Setback - two hundred (200) feet buffer surrounding the property to be kept undeveloped except for entrance and exit roadways.
(d)    Major access roads and major parking areas subject to frequent use day or night shall be paved. Major roads are to be eighteen (19) feet wide and shall not exceed a 7 1/2% grade.
(e)    Parking areas shall be screened as provided in Section 2: DEFINITIONS - SCREENING - (a) and (c).
(f)    Parking areas shall be within three hundred (300) feet of the building to be served.
(g)    Parking requirements:

    (1)    Place of assembly: 1 space for every three (3) seats.
    (2)    Classrooms and/or dormitories:
        Grade 1-10    1 space for each staff member
        Grade 10-12   1 space for each staff member plus 1 space for every two students.
        College    1 space for each staff member plus two (2) spaces for every three (3) students.

*(Exh. 1, LZB, §9.18)*

With these restrictions, in particular the 4% maximum building coverage, St. Ann could not build a parish hall on its property. As discussed below, no other use of any kind that is permitted under the bylaw, in any district, has this combination of restrictive provisions. Almost all of the "maximum building coverage" restrictions range from 20% -35%, even in commercial and industrial districts (Exh. 1, *LZB §8.4*).

In 2000, Congress passed the Religious Land Use And Institutionalized Persons Act of 2000 *42 U.S.C. 2000cc et seq.* The act prohibits government from placing substantial burdens on religious exercise and from discriminating in local zoning ordinances and local zoning decisions.

On October 8, 2003, St. Ann applied for a building permit for a parish hall (Complaint,

Exh. B).  Given that the plans themselves could not conform to the zoning bylaw, St. Ann filed a

legal brief with the request for the permit, contending that RLUIPA required that Lenox not

enforce §9.18 and that the permit should, therefore, be granted (Complaint, Exh. D).  The

assistant building inspector sought an opinion from special town counsel with respect to the

application of RLUIPA to the Lenox Bylaws.  On November 20, 2003, Donald Dubendorf, Esq.,

as special town counsel, issued an opinion (Complaint, Exh. E).   Town Counsel concluded that

the permit should issue, in an opinion which provided:

> ...it does appear that §9.18 of the Bylaws prevents St. Ann's from
> enjoying in conduct ... that is central to its religious doctrine", and
> that §9.18 is "more than an inconvenience" to St. Ann's.
> Therefore, it is our opinion that St. Ann's would meet the
> substantial burden element under RLUIPA ...
>
> ... it is difficult to see what that compelling interest [of the Towns]
> might be in light of the uses allowed at the church site under the
> Bylaw.  If the Town's compelling interest was to protect the health,
> safety and general welfare of the Town's inhabitants by reducing
> traffic and minimizing activity in that general area, it is unclear
> why then the Bylaw would permit the use of the Church site for a
> Municipal use, private nonprofit library or museum, post office or
> medical professional offices ... as such it is difficult to support the
> position that §9.18 of the Bylaw furthers a compelling government
> interest in ...
>
> The Town of Lenox would also have a struggle in withstanding a
> challenge to the discriminating nature of §9.18 ... it is our opinion
> that §9.18 of the Bylaw violates the anti-discrimination provision
> of RLUIPA. (Complaint, Exh. E, pp. 4-5)

Accordingly, the assistant building inspector issued the permit on November 26, 2003,

with the restriction that the parish hall and church not operate at the same time, in order to

4

conform to parking regulations (Complaint, Exh. F).

On December 18, 2003, the plaintiffs filed an appeal to the Lenox Zoning Board of Appeals under *§ 11.2.1* of the *LZB* asking that the building permit be revoked as a violation of the *LZB* (Complaint, Exh. G).  Hearings were held on three dates: January 21, 2004, February 12, 2004, and February 26, 2004.  On February 26, 2004, the Board voted 5-0 to uphold the permit but required additional parking spaces (Complaint, Exh. A).  Plaintiffs then commenced this action.

On May 5, 2005, at the Annual Town Meeting of the Town of Lenox, §9.18 of the Bylaw was amended (by vote of 266 to 73) to add:[2]

> 9.18.1  Any property located in the Commercial C Zone or Residential R-15 Zone used previously for religious purposes shall be exempt from the provisions of this Secion 9.18.
>
> (Exh. 3)

This amendment eliminates the discriminatory provisions of §9.18.


## ARGUMENT

**I.    Count I Of The Complaint Should Be Dismissed Because §9.18 Of The LZB Violates RLUIPA.**

In their first cause of action, the plaintiffs assert that the proposed parish hall fails to comply with *LZB § 9.18*.  It is not disputed that the proposed hall cannot comply with §9.18.

The plaintiffs argue that the building permit should not have been granted without a variance from these provisions.  It should be noted that while the request for a variance

---

[2]This amendment still must be approved by the Attorney General.  As noted below, once approved and final, it moots most of the plaintiffs' counts.

proceeding may sound quite reasonable, the legal basis for the grant of a variance in

Massachusetts is extremely restrictive, permitting a variance only for:

> ... "circumstances relating to the soil conditions, shape or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or bylaw would involve substantial hardship financial or otherwise... .
>
> *M.G.L. c. 40A, §6.*

At the time the application for a building permit was filed, the RCB argued that those

provisions of the zoning ordinance which the hall did not comply with could not be enforced

under RLUIPA *42 U.S.C. 2000cc et seq.* The matter was referred to town counsel who

determined that the ordinance was not valid under RLUIPA. In particular, the town counsel

found that §9.18 imposed a substantial burden on St. Ann:

> Keeping in mind that RLUIPA commands us to construe the statute broadly in favor of religious exercise, it does appear that §9.18 of the by-laws prevents St. Ann's from engaging in conduct that is central to its religious doctrine and that the application of §9.18 is "more than an inconvenience" to St. Ann's. Therefore, it is our opinion that St. Ann's would meet the substantial burden element under RLUIPA (Complaint, Exh. E).

Secondly, town counsel found that §9.18 also violated the anti discrimination provisions

of RLUIPA noting:

> Here, §9.18 of the By Law imposes the combined onerous setback and coverage requirements on religious and private educational institutions and no others. St. Ann's points out correctly in its Application that other more intensive uses of land are subject to only one of the dimensional requirements but not both ... There can be no claim that this is a regulation of general applicability since it is directed solely to religious and private educational uses (Complaint, Exh. E).

6

The opinion of town counsel is correct: §9.18 of the zoning ordinance cannot withstand scrutiny under RLUIPA. Ultimately, the Town of Lenox Zoning Board of Appeals agreed with these findings. The ZBA found by vote of 5 - 0 that the decision of the Building Inspector should be upheld with the additional requirement of fifty more parking spaces (Complaint, Exh. A). The Board made twenty-six supporting findings, including findings that §9.18 imposed substantial burdens on St. Ann's exercise of religion and that there was no compelling government interest in these provisions (Complaint, Exh. A).

**A.    *§9.18 of the By Law Violates RLUIPA.***

    1.)    *§9.18 Imposes a Substantial Burden on St. Ann's Religious Practice.*

        a)    The Statute:

RLUIPA was enacted in 2000 by Congress. The statute provides:

> No government shall impose or implement a land use
> regulation in a manner that imposes a substantial burden on
> the religious exercise of a person, including a religious
> assembly or institution unless the government demonstrates
> that imposition of the burden on that person, assembly or
> institution -
>
> (a)    is in furtherance of a compelling government
>        interest and
> (b)    is the least restrictive means of furthering that
>        compelling government interest.
>
> *42 U.S.C. §2000cc(a)(i)*

The Lenox Bylaw cannot meet the burden established by this section and violates the act.

        b)  Substantial Burden on Religious Exercise.

There is no dispute in this action that the existing *§9.18* would prohibit the church from

building the requested parish hall. Nor can there be any dispute that the by law in question

creates significant restrictions in the development of real estate by a religion for church purposes

by creating building coverage, setback, and buffer requirements that are unprecedented under the

bylaw for other uses, even the most intense ones.

Presumably, since the plaintiffs assert that *§9.18's* restrictions should apply, there should

be no issue that the restrictions concern "religious exercise." Section 9.18 governs "religious

uses." RLUIPA defines religious exercise as follows:

(A)    In general

The term "religious exercise" includes any exercise
of religion, whether or not compelled by, or central
to a system of religious belief.

(G)    Rule

The use, building or conversion of real property for
the purpose of religious exercise shall be considered
to be a religious exercise if the person or entity that
uses or intends to use the property for that purpose.

*42 U.S.C. §2000cc(7)(A)(B)*

This definition was clearly designed to ensure that protection would extend to more than

worship services alone. Here, the church needs space for necessary administrative functions such

as council meetings and for religious education. It also needs space for parishioners to be able to

congregate after services, as well as some social functions. In constitutional cases the courts

have recognized that ancillary functions play a role in religious exercise. A place of worship and

necessary ancillary facilities to run the parish, as well as a location to administer and operate

religious education are central and "core" to churches' mission and denial of this constitutes a

substantial burden. *Bryant* v. *Gomez*, 46 F.3d 948, 949 (9th Cir. 1995) (substantial burden exists

where state action "prevents him or her from engaging in conduct or having a religious experience that is central to the religious doctrine."). *See also Reese* v. *Coughlin*, 1996 U.S. Dis. LEXIS 9206, (S.D. N.Y., 1996). There is a substantial burden where there is "more than an inconvenience" to the affected party. *Jolly* v. *Coughlin*, 76 F.3d 468, 476 (2ⁿᵈ Cir. 1996). The absence of appropriate space to administer a church and conduct religious education, effectively forces the church to modify its behavior. *See Thomas* v. *Review Board of the Indian Employment Security Div.*, 450 U.S. 707, 718 (1981).

Under RLUIPA, Congress intended to prevent a church and its parishioners from having to modify or forego a part of their religious practices. *Murphy* v. *Zoning Commission of the Town of Milford*, 148 F. Supp. 2d 173, 189 (D. Conn. 2001), reversed on other grounds 402 F.2d 342 (2ⁿᵈ Cir. 2005).

The need for a church, as part of its religious exercise, to engage in ancillary activities it deems necessary to its religious mission has been addressed in constitutional cases in a number of contexts from sheltering the homeless to access to meeting rooms. *First Assembly of God of Naples, Fla, Inc.* v. *Collier County*, 20 F.3d 419, 422 (11ᵗʰ Cir. 1994) ("Sheltering the homeless is an essential aspect of the Christian religion.") *Stuart Circle Parish* v. *Bd. Of Zoning Appeals*, 946 F. Supp. 1225, 1236 (E.D. Va 1996) ("feeding the poor constitutes a central tenet of the religion practiced at the six churches involved in the meal ministry."), *Young Israel Organization*, 133 N.E.2d at 176 (meeting rooms, club rooms, and classrooms), *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints* v. *Ashton*, 448 P.2d 185, 189 (Idaho 1968) (use of a field for recreational purposes permissible), *Board of Zoning Appeals* v. *New Testament Bible Church, Inc.*, 411 N.E.2d 681, 685 (Ind. Ct. App. 1980) ("If one is entitled

9

to build a church, he may not be denied the opportunity to build accessaries as well.") (*See also Alpine Christian Fellowship* v. *County Commissioners of Pitlein Co.*, 870 F. Supp. 991 (D. Col. 1994) (unconstitutional to deny permit for religious school in church building even though schools not permitted in the zone.)

In Massachusetts, in interpretations of both the Constitution and *M.G.L. c. 40A §3* (the Dover Amendment) the Supreme Judicial Court has made clear that one cannot assess the requirement of a "religious use" by requiring every element of a religious structure to have religious meaning:

> To view each element, each section of a "structure", as requiring an independent "religious" use leads to impossible results: Is a church kitchen or a church parking lot a "religious" use? We have not formulated the test so narrowly. *Trustees of Tufts College* v. *Medford*, 415 Mass. 573, 754-755, 616 N.E.2d 433 (1993), for example, we considered the applicability of the Dover Amendment to several construction projects proposed by an educational purpose, because it "will be located in the core ... area of Tufts' campus." *Id.* at 755, 616 N.E.2d 433. While the judge's inquiry may have focused on the steeple because the temple complied in all other aspects with Belmont's zoning Bylaws, the question under the statute is whether the structure as a [434 Mass. 150] whole is to be used for religious purposes. It clearly is, and just as clearly the Dover Amendment applies.
>
> The judge also used an erroneous legal test to determine whether a "structure" serves a religious purpose, thereby entering an area of inquiring that the First Amendment to the United States Constitution prohibits. She correctly noted that " '[r]eligious purpose' means something in aid of a system of faith and worship," citing *Needham Pastoral Counseling Ctr., Inc.* v. *Board of Appeals of Needham*, 29 Mass.App.Ct. 31, 33, 557 N.E.2d 43 (1990). She then impermissibly concluded that a steeple is not "a necessary element of the Mormon religion."
>
> It is not for judges to determine whether the inclusion of a particular architectural feature is "necessary" for a particular religion. A rose window at Notre Dame Cathedral, a balcony at St.

Peters Basilica–are judges to decide whether these architectural elements are "necessary" to the faith served by those buildings? The judge found, as she was compelled to do in the face of overwhelming and uncontradicted testimony, that temples "are the places where Mormons conduct their sacred ceremonies." No further inquiry as to the applicability of the Dover Amendment was warranted. *S. Parish of the Advent* v. *Protestant Episcopal Diocese of Ma.*, 426 Mass. 268, 284-285, 688 N.E.2d 923 (1997) (civil tribunals must avoid resolving matters of purely ecclesiastical nature). See also *Employment Div., Dep't of Human Resources of Or.* v. *Smit*, 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), and cases cited ([r]epeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religious or the plausibility of a religious claim").

*Martin* v. *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints*, 434 Mass. 141, 149-150 (2001).

It may be argued that since St. Ann's Church has already existed and "exercised" religion without a parish hall, the absence of the hall is not a substantial burden and not necessary to the exercise of religion. Of course, this kind of circular reasoning could prohibit a church from ever doing anything it had not done before, itself a substantial burden. Such reasoning would force the court to determine by its own judgment what St. Ann's "religious" exercise entails, creating, in turn a first amendment entanglement problem. *See Lakewood Ohio Congregation of Jehovah Witnesses, Inc.* v. *City of Lakewood, Ohio*, 699 F.2d 303 at 304, n.2, (6th Cir. 1983), cert. denied, 464 U.S. 815 (1982), *Laurie Reynolds, Zoning the Church: The Police Power vs. The First Amendment*, 64 B.U.L. Rev., 767 n.38, 811-814 (1984). As the Supreme Court has stated, "Religious beliefs need not be acceptable, logical, consistent or comprehensible to others in order to meet First Amendment protection. *Thomas* v. *Rev. Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981). See also *Burlington Assembly of God Church* v. *Zoning Bd. Of Adjustment*, 570 A.2d 495, 499 (N.J. Super. Ct. Law Div. 1989), *W. Presbyterian Church* v.

*Board of Zoning Adjustment*, 862 F. Supp. 538, 547 (D.D.C. 1994) ("to regulate religious conduct [feeding the needy] through zoning laws, as done in this case, is a substantial burden on the free exercise of religion.")

A possible related argument might be that the church should try to build its needed ancillary facility at another location. This defeats the whole concept of RLUIPA, which is to protect land use by religious owners, as religious exercise. To say that a land owner would not be burdened by regulation if he had more land somewhere else, evades the issue of compliance with the statute. The general prohibition of RLUIPA is that "no government should impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person ..." *42 U.S.C. §2000bb-4*. The statute defines "land use regulation" as follows:

> The term "land use regulation" means a zoning or landmarking law, or the application of such a law, that limits or restricts Claimants use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold easement servitude or other property interest in the regulated land or a contract or option to acquire such an interest.
>
> *42 U.S.C. §2000cc-5*

Clearly, the statute is meant to apply to the land then owned by the religious entity. In the present case, §9.18 of the zoning ordinance, which creates the burden in the first place, applied to all of Lenox, which would in turn force the church to find another piece of land that could meet the strict requirements of §9.18.

But even if this were not the case, forcing the church to look for another piece of land itself creates a substantial burden. Recently, the Seventh Circuit addressed this question in *Sts. Constantine and Helen Greek Orthodox Church, Inc.* v. *City of New Berlin*, 396 F. 3d 895 (7th

12

Cir. 2005). In response to such an argument, the court held:

> The church could have searched around for other parcels of land ...
> or it could have continued filing applications with the City, but in
> either case there would have been delay, uncertainty and expense.
> That the burden would not be insuperable would not make it
> insubstantial ...
>
> *Id. at 901, citing Sherbert* v. *Verner*, 374 U.S. 398, 399 n.2 ("the
> Supreme Court held that the fact a longer search would probably
> have turned up something didn't make the demise of
> unemployment benefits an insubstantial burden.)

This is also true in the constitutional context. In *Islamic Center of Mississippi, Inc.* v.

*City of Starkville*, 840 F.2d 293 (5th Cir. 1988) the court held that the right to build an Islamic

Center could not be denied on grounds that it could be done elsewhere:

> The district court's opinion and the City's brief both suggest that
> application of the zoning ordinance to the Islamic Center places no
> burden on it or its members because they can establish a mosque
> within walking distance of the campus outside the city limits or
> buy cars and ride to more distant places within the City. The
> suggestion is reminiscent of Anatole France's comment on the
> majestic equality of the law that forbids all men, the rich as well as
> the poor, to sleep under bridges, to beg in the streets, and to steal
> bread. [FN] Laws that make churches, synagogues, and mosques
> accessible only to those affluent enough to travel by private
> automobile obviously burden the exercise of religion by the poor, a
> class that includes many students. [FN] And a city may not escape
> the constitutional protection afforded against its actions by
> protesting that those who seek an activity it forbids may find it
> elsewhere. [FN] By making a mosque relatively inaccessible within
> the city limits to Muslims who lack automobile transportation, the
> City burdens their exercise of their religion.
>
> *Islamic Center of Mississippi* v. *City of Starkville, Miss.*, 840 F.2d
> 293, 298-299 (*5th Cir. 1988*).

c)     Substantial Burden In This Case.

St. Ann's parish hall is a facility necessary to accomplish basic day to day functions and

special events. The facility is to be used for administration offices, including meeting rooms for

parish governance councils and offices for the director of religious education. The

administration governance of the church is obviously a necessary function for its existence.

These functions are presently being performed in the pastor's residence - the church rectory,

which was built to be a residence and not offices and meeting rooms. The hall will also be used

for small social events ancillary to the Church's services. The existence of such a building next

to a church is quite common probably everywhere, but certainly in Lenox, where every other

church has a hall.

2.)     *There Is No Compelling State Interest To Justify The Zoning Burden On The*
        *Church*

Under RLUIPA once it is shown there is a substantial burden on religious exercise the

burden shifts to the proponent of the regulation to demonstrate:

> "That imposition of the burden on that person, assembly or
> constitution -
> (A) is in furtherance of a compelling government interest
> (B) is the least restrictive means of furthering that compelling
> governmental interest.
>
> *42 U.S.C. §2000cc(a)(1)(A)(B)*

In the present case it is not clear what "compelling government interest" the plaintiffs

would allege, but it is clear that there are no reasonable grounds for advancing a compelling

government interest within the meaning of the statute. The opinion of town council found no

compelling interest and the Zoning Board of Appeals found no compelling interest.

14

As discussed below, the discriminatory nature of the ordinance defeats any argument as to a compelling government interest, because there is no way to justify restriction on a church as necessary and compelling when similar non-religious uses are not so restricted. In constitutional cases, the Supreme Court has held that burdens on religious exercise are justified in "only the gravest abuses, endangering paramount interests." *Sherbert* v. *Verner*, 374 U.S. 398, 406 (1963), or "only those interests of the highest order." *Wisconsin* v. *Yoder*, 406 U.S. 205, 215 (1972). In land use contexts, courts have required "a clear and present, grave and immediate danger to public health, peace and welfare." *First Covenant Church* v. *City of Seattle*, 840 P.2d 174, 187 (Wash. 1992).

In discussing this issue the Supreme Court has stated:

> A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance 'interests of the highest order' and must be narrowly tailored in pursuit of those interests. The compelling interest standards that we apply once a law fails to meet the Smith requirements is not 'watered ... down' but 'really means what it says" ... Where government restricts only conduct protected by the First Amendment and fails to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest given in justification of the restriction is not compelling."
>
> *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hideah*, 508 U.S. 520, 546-547 (1993).

As a result of the application of these principles, concerns about parking, traffic noise, property values and aesthetics have been rejected. See *Cornerstone Bible Church* v. *City of Hastings*, 948 F.2d 464, 469 (8th Cir. 1991) (traffic and parking), *Ohio Congregation of Jehovah's Witnesses, Inc.* v. *City of Lakewood*, 699 F.2d 303, 305 (6th Cir. 1983) (noise and

15

property value), *Englewood* v. *Apostolic Christian Church,* 362 P.2d 172, 177 (Colo. 1961)
(possible depressive effect on property values not itself sufficient grounds for denying a permit
for construction of a church).  Courts have also recognized that with respect to church facilities,
issues such as traffic and parking are not likely to be compelling since their impact is transitory
and infrequent.  See *Love Church* v. *City of Evanston*, 671 F.Supp. 515, 519 (N.D. Ill. 1987)
("While traffic concerns are legitimate, we could hardly call them compelling... Evanston does
not indicate how a church poses a greater traffic problem than say, a funeral parlor.") *vacated
based on standing* 896 F.2d 1082 (7th Cir. 1990), *State ex rel. Tampa Fla Ca. Of Jehovah's
Witnesses N. Unit, Inc. v.* City of Tampa*, 48 So. 2d* 78, 79 (Fla. 1950), *Young Israel Org.* v.
*Dworkin*, 133 N.E.2d 174, 181 (Ohio Ct.App. 1956).

    3.)    *Prohibition Of The Parish Hall Is Not The Least Restrictive Means Of Furthering
             Any Government Interest*

       The burden on the plaintiffs in this category is two fold.  They must also show that the
restrictions of §9.18 of the ordinance are the "least restrictive" means of protecting whatever
compelling interest they assert.  In this respect the discriminatory aspect of the ordinance
destroys any chance of making such proof.  If other institutions of similar size and impact are not
subject to these restrictions, it cannot be shown that this is the least restrictive means of
furthering the "compelling" interest.

       It must also be considered that both with respect to a compelling government interest and
a showing of least restrictive means, the responsible authorities of the Town of Lenox did not
assert any.  The building inspector, town counsel and the Zoning Board of Appeals all decided
that there was not a compelling government interest and, therefore, could not find that §9.18 was

the least restrictive means of achieving it. Issues of government interest can be addressed by the far less restrictive means of conditions on a permit. See e.g. *W. Presbyterian Church* v. *Bd. Of Zoning Adjustment*, 862 F.Supp. 538, 545 (D.D.C. 1994) (no compelling government interest in prohibiting a church program so long as appropriate controls are in place). *Murphy* v. *Zoning Commission*, 148 F.Supp. 2d 173, 192 (D.Conn. 2001) (applying RLUIPA). In this case both the inspector (no joint use of church and hall) and the zoning board (parking) did inspect conditions.

      4.)      *The Lenox Zoning Ordinance Is Discriminatory Towards Religious Institutions.*

Even if the Lenox Bylaw did not impose a substantial burden on the defendant's religious practices, it violates §2000cc(b)(i) of RLUIPA which provides:

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a non-religious assembly or institution.

> *42 U.S.C. §2000cc(b)(1)*

2000cc(b)(2) provides:

> No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

> *42 U.S.C. §2000cc(b)(2)*

§9.18 of the Lenox zoning ordinance clearly violates these two sections and does so on the face of the ordinance. Town counsel described the problem as follows:

> Here, §9.18 of the Bylaw imposes the combined onerous setback and coverage requirements on religious and private educational institutions and no others. St. Ann's points out correctly in its application that other more intensive uses of land are subject to only one of the dimensional requirements, but not both. They regulatory scheme under §9.18 is an overlay district and so applies

> to religious uses no matter what district they are in. There can be
> no claim that this is a regulation of general applicability since it is
> directed solely to religious and private educational uses. *Murphy*
> v. *Zoning Commission of the Town of New Milford*, 2003 U.S.
> Dist. LEXIS 17830, 38 (D. Conn. 2003). Therefore, it is our
> opinion that §9.18 of the Bylaws violates the anti-discrimination
> provision of RLUIPA (Complaint, Exh. E).

The Zoning Board of Appeals agreed (Complaint, Exh. A). Indeed, it is hard to imagine how they could not agree. There is no question that under the Bylaw, religious institutions are treated on less than equal terms than all others, save private educational uses, which encompasses religious schools.

§9.18's restrictions are more stringent than what is required of other land owners in residential, commercial and industrial areas. For instance, in §8.4 of the bylaw, land space requirements for *all* districts range from 10% (R-3A) to 20% (6 districts) to 35% (Industrial). *LZB §8.4.* But under §9.18(b) the restriction is 4% for religious institutions. *LZB §9.18.* A few zones have similar buffer requirements for frontage and setback, but no other use in any zone has such a combination of restrictions as that set forth in *§9.18.* The only other special requirements for particular uses, are a 5% land space use for unit offices or research centers *(LZB §9.14.1)* and then only if they are in a residential district, and a 200 foot buffer zone for resorts. *LZB §7.15.* Neither of these uses has any other restriction. Those uses, unlike a church, would occur on a regular, daily basis. There is nothing about religious uses which could justify such discrimination on a rational or objective basis.

Since the building in question will result in 13% land use for St. Ann's (see Complaint, Exh. A), St. Ann's cannot build anything else and comply with the Bylaws. Indeed, were it not for the church itself having predated the bylaw, it could not satisfy this set of requirements.

The Lenox bylaw also violates *§2000cc(b)(2)(B)* of RLUIPA which states:

> No government shall impose or implement a land use regulation that -
>
> (B)    Unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.
>
> *42 U.S.C. §2000cc(b)(2)(B)*

Here again, the discriminatory nature of the Bylaw violates RLUIPA. The 4% land coverage requirement of the Bylaw is lower than any other use. Only one use has a requirement close to this: that of unit offices or research centers in residential districts. One would expect a religious use to have less frequent and less intense use then these every day commercial ventures. There is simply no rational reason to single out religious uses for this restrictive treatment.

The assertion in Count I that the defendants should have been required to apply for a variance is inapplicable because 42 U.S.C. §2000cc-3(e) provides:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.
>
> *42 U.S.C. §2000cc-3(e)*

Under this provision, Lenox had the option, if not the obligation, to refuse to enforce the offending provisions of *LZB §9.18*. A variance in any event would not have been a realistic option for St. Ann's since a variance in Massachusetts is only available under *M.G.L. c. 40A, §10* for issues related to soil conditions or topography of the land.

Since §9.18 of the Bylaws violates RLUIPA, the defendants are entitled to judgment on Count I.

## II.    The Proposed Building Does Not Violate The Bylaws' Parking Requirements

Count II of the Complaint asserts that the defendant should have been required to seek a variance for failure to comply with the parking requirements and §10.6 of the Bylaw. That section requires one space for every three seats for "other places of assembly". *LZB* §10.6. The complaint states that the church has 599 seats and, therefore, requires 200 parking spaces, but has only 44. (Complaint, para. 34-36). This is accurate, but concerns only the church building, which is not in violation since it pre-existed the parking requirement. Plaintiff then attempts to back into a "violation" by referring to the project at issue as the "church buildings" and the parish hall as an "enlargement" of the church building. (Complaint, para. 36-37). But as the Board found, the parish hall is not an enlargement of the church. It is a separate building. It, therefore, need only comply with the number of spaces it would itself require. (Complaint, Exh. A, para. 13-15). The Zoning Board of Appeals dealt with this issue, finding that the new hall would hold 150 people and requiring that it therefore provide for 50 parking spaces. (Complaint, Exh. A, para 13-15). St. Ann's will comply with the requirement of the board. That requirement does not violate the Bylaws and St. Ann has further promised not to use the hall and the church at the same time.

## III.    Section 8 Of The Bylaws Was Not Violated By The Building Committee Or The Zoning Board of Appeals

In their "third cause of action", the plaintiffs allege that the proposed hall is on a lot

which lacks adequate frontage or width for a new building. Both the building inspector and the

ZBA found no such violation. It is clear from the record that, even without consideration of

whether RLUIPA applies and has an effect here, there is adequate frontage under the zoning

Bylaws. These requirements are set forth in *LZB §8.4.* St. Ann's is located in an R-15

residential district. That district requires a minimum lot frontage of 85 feet and a lot width at the

building line of 85 feet. The plan filed with the permit (Complaint, Exh. C) shows more than

adequate frontage and width, as was found by the Board (Complaint, Exh. A, para. 10-12).

Therefore, there is no basis for the third cause of action.

**IV.    The Project At Issue Is Not The Extension Of An Existing Non-conforming Use And Does Not Violate The Bylaw.**

Plaintiffs in their fourth cause of action claim that the defendant Diocese should have

been required to seek a special permit under Section 5 of the *LZB.* Section 5.1 provides:

> Any lawful use of any building, structure, and/or land may be
> continued although not conforming with the provisions of this
> bylaw, but no such non-conforming use shall be changed, extended
> or enlarged in any manner, except as provided in Section 5.4.
>
> *LZB §5.1*

This section is patterned after M.*G.L. c. 40A §6,* which provides:

> Except as hereinafter provided, a zoning ordinance or by-law shall
> not apply to structures or uses lawfully in existence or lawfully
> begun, or to a building or special permit issued before the first
> publication of notice of the public hearing on such ordinance or by-
> law required by section five, but shall apply to any change or
> substantial extension of such use, to a building or special permit
> issued after the first notice of said public hearing, to any
> reconstruction, extension or structural change of such structure and
> to any alteration of a structure begun after the first notice of said
> public hearing to provide for its use for a substantially different

21

purpose or for the same purpose in a substantially different manner
or to a substantially greater extent except where alteration,
reconstruction, extension or structural change to a single or two-
family residential structure does not increase the nonconforming
nature of said structure.

*M.G.L. c. 40A §6*

Plaintiffs assert that "the existing church buildings are non-conforming with respect to the inadequate parking and excessive height of the church structure." (Complaint, para. 47). Whether they are or not is irrelevant. The new project in question is a separate building and not an expansion of the church. It matters not if the church is non-conforming. (Complaint, Exh. A, para. 11, 19, 22).

Neither the wording of the statute nor the wording of Section 5.1 could justify application to the parish hall. Although the church itself may be a non-conforming building as to parking and height, its status is protected as a pre-existing non-conforming building. *M.G.L. c. 40A, §6.*[3] It is not a non-conforming use, as religious use is allowed in the district. The construction of a separate building near a pre-existing non-conforming building has never been held to be a change, extension, or enlargement under *c. 40A, §6*. The plain wording of both *M.G.L. c. 40A, §6* and Section 5.1, say nothing of other buildings on the same land. Count IV should be dismissed.

---

[3] It is highly unlikely that the height requirement, if it were applicable, could withstand scrutiny under *M.G.L. c. 40A §3* or the constitution. *See Martin* v. *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints, 434 Mass. 141 (2001).*

**V.    M.G.L. c. 40A §3 Is Not As Protective As RLUIPA.**

In their fifth cause of action the plaintiffs claim that *M.G.L. c. 40A §3* should be the only statute applied to the defendant's parish hall on the theory that *M.G.L. c. 40A §3's* Dover Amendment is "more protective of religious exercise" than RLUIPA and therefore applicable under *42 U.S.C. §2000cc-3(a)*. Plaintiffs present this argument even though they will undoubtedly claim that the new parish hall can be denied a permit under *M.G.L. c. 40A §3*. What they claim is the "more protective" statute will, in *their* eyes at least, ultimately provide the defendant with no protection at all. This fact in and of itself makes the fifth count self contradictory if not disingenuous.

M.G.L. c. 40A §3 provides in part:

> No zoning ordinance or by law shall ... prohibit, regulate or restrict the use of land or structures for religious purposes... provided however that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements.

*M.G.L. c. 40A §3*

The above is frequently referred to as the "Dover Amendment." Plaintiffs do not literally claim in the fifth cause of action that application of the Dover Amendment and exclusion of RLUIPA would result in no building permit. Instead, they claim the building inspector and/or the ZBA should have "heard evidence" or "considered" the extent to which the proposed hall should conform to the "reasonable" regulations of §3 (Complaint, para. 55). Of course it is perfectly obvious that the "reasonable regulations" that the plaintiffs propose are not anything in §3 (which has no regulations) but §9.18 of the *LZB*, which would prohibit the building.

RLUIPA contains the following provision:

> Nothing in this Chapter shall be construed to preempt state law, or
> repeal Federal law, that is equally as protective of religious
> exercise as, or more protective of religious exercise than, this
> chapter.

*42 U.S.C. §2000cc-3(h).*

Plaintiffs assert that the Dover Amendment is a more protective state law. This cannot be

the case, either in this instance or generally. The Dover Amendment provides only two forms of

protection: it allows the use of land for religious purposes and it allows only "reasonable" bulk ,

dimensional and parking requirements. It does not protect religious exercise from all substantial

burdens, absent a compelling government interest that is the least restrictive means. A regulation

could well be deemed reasonable without meeting these criteria. Nor does the Dover

Amendment prohibit, on its face anyway, land use regulation that treats religious uses on less

than equal terms. Everything that the Dover Amendment achieves as protection is already

contained in only one of RLUIPA's provisions:

> (3)  Exclusions and limits
>
> No government shall impose or implement a land use regulation
> that -
>
> (A)  totally excludes religious assemblies from a jurisdiction; or
>
> (B)  unreasonably limits religious assemblies, institutions,
> or structures within a jurisdiction.

*42 U.S.C. §2000cc(b)(3)*

RLUIPA, therefore, prohibits all that §3 of 40A prohibits *and* forbids imposing

substantial burdens on religious exercise, as well as discrimination. It further provides broad and

non-restrictive definitions of religious exercise and land use regulation. The Dover Amendment

24

could not be reasonably construed as equally protective.

In this particular instance of course, the defendant would be completely dependent upon a finding that §9.18 is "unreasonable" in order to obtain protection from the Dover Amendment. That the plaintiffs feel this will aid their cause itself defeats their own argument. Defendant submits that §9.18 is indeed unreasonable under *M.G.L. c. 40A,* particularly because it is discriminatory. But this fact alone hardly provides the definitive kind of protection that RLUIPA does.

## VI.    RLUIPA Is Constitutional

In their seventh count, the plaintiffs challenge the constitutionality of RLUIPA, claiming that it violates the establishment clause of the First Amendment and constitutes a "taking" under the Fifth and Fourteenth Amendments (Complaint para. 66).    Just last week the Supreme Court ruled that §3 of RLUIPA, which deals with the religious exercise of persons confined to an institution, is constitutional. *Cutter* v. *Wilkinson,* 544 U.S. _____ (2005) No. 03-9877 May 31, 2005. Although the court did not express any opinion as to, or have before it the land use provisions of the Act, its rationale is instructive. The court held that accommodation of religious exercise need not violate the Establishment Clause:

> "This Court has long recognized that the government may ...
> accommodate religious practices ... without violating the
> Establishment Clause." *Hobbie* v. *Unemployment Appeals*
> Comm'n of Fla., 480 U.S. 136, 144-145 (1987). Just last Term, in
> *Locke* v. *Davey,* 540 U.S. 712 (2004), the Court reaffirmed that
> "there is room for play in the joints between" the Free Exercise and
> Establishment Clauses, allowing the government to accommodate
> religion beyond free exercise requirements, without offense to the
> Establishment Clause. *Id.* at 718 (quoting *Walz* v. *Tax Comm'n of
> City of New York,* 397 U.S. 664, 669 (1970)). At some point,

accommodation may devolve into 'an unlawful fostering of religion.' *Corporation of President Bishop of Church of Jesus Christ of Latter-day Saints* v. *Amos,* 483 U.S. 327, 334-335 (1987) (quoting Hobbie, 480 U.S., at 145). But §3 of RLUIPA, we hold, does not, on its face, exceed the limits of permissible government accommodation of religious practices...

Our decisions recognize that "there is room for play in the joints" between the Clauses, *Id.*, at 669, some space for legislative action neither compelled by the Free Exercise Clause nor prohibited by the Establishment Clause. See, *e.g., Smith,* 494 U.S., at 890 ("[A] society that believes in the negative protection accorded to religious belief can be expected to be solicitous of that value in its legislation ..."); *Amos,* 483 U.S., at 329-330 (Federal Government may exempt secular nonprofit activities of religious organizations from Title VII's prohibition on religious discrimination in employment); *Sherbert* v. *Verner,* 374 U.S. 398, 422 (1963) (Harlan, J., dissenting) ("the constitutional obligation of 'neutrality' is not so narrow a channel that the slightest deviation from an absolutely straight course leads to condemnation." (citation omitted))

*Id., Slip Opinion* at 2-3, 9.

The court found it significant that RLUIPA "does not differentiate among bona fide faiths" and "it confers no privileged status on any particular religious sect and singles out no bona fide faith for disadvantaged treatment". *Id.* at 13.

The court made clear that even exempting religious organizations from some laws can be permissible:

There, we upheld against an Establishment Clause challenge a provision exempting "religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion." 483 U.S., at 329. The District Court in *Amos,* reasoning in part that the exemption improperly "single[d] out religious entities for a benefit," *Id.*, at 338, had "declared the statute unconstitutional as applied to secular activity," *Id.*, at 333. Religious accommodations, we held, need not "come packaged with benefits to secular entities." *Id.*, at 338; see *Madison,* 355 F.3d, at 318 ("There is no requirement that legislative protections

26

> for fundamental rights march in lockstep.").
>
> Were the Court of Appeals' view the correct reading of our decisions, all manner of religious accommodations would fall.
>
> *Id.*, *Slip Opinion* at 14.

These principles weight strongly in favor of the constitutionality of RLUIPA's land use provisions.

With respect to the land use provisions of the Act, the constitutionality of RLUIPA has been challenged under various theories in numerous courts since its adoption. Every court but one, including the 7th and 11th Circuit Courts of Appeal, has approved the constitutionality of the Act. *Charles* v. *Verhagen*, 348 F.3d 610, 610-611 (7th Cir. 2003). *See Midrash Sephardi* v. *Town of Surfside*; 366 F.3d 1214 (11th Cir. 2004) (rejecting Enforcement Clause challenge to RLUIPA Section 2(b); *Congregation Kol Ami* v. *Abingdon Tp.*, 2004 WL 1837037, at *9 (E.D.Pa. Aug. 17, 2004) (rejecting constitutional challenge to RLUIPA Section 2(a); *Williams Island Synagogue, Inc.* v. *City of Aventura*, No. 04-20257-CV, 2004 WL 1059798 (S.D. Fla. May 06, 2004) (same); *Castle Hills First Baptist Church* v. *City of Castle Hills*, No. SA-01-CA-1149-RF, 2004 WL 546792 (W.D. Tex. Mar. 17, 2004); *Murphy* v. *Town of New Milford*, 289 F.Supp.2d 87 (D.Conn. 2003) *rev'd on other grounds* 402 F.3d 342 (2nd Cir. 2005); *United States* v. *Maui County*, 298 F.Supp.2d 1010 (D.Haw. 2003) (same); *Guru Nanak Sikh Society* v. *County of Sutter*, 326 F.Supp.2d 1140 (E.D.Cal. 2003) (same); *Westchester Day Sch.* v. *Village of Mamaroneck*, 280 F.Supp.2d 230 (S.D.N.Y. 2003) *rev'd on other grounds* 386 F.3d 183 (2nd Cir. 2004); *Life Teen, Inc.* v. *Yavapai County*, No. Civ. 01-1490-PCT-RCB (D.Ariz. Mar. 26, 2003) (same); *Christ Universal Mission Church* v. *City of Chicago*, No. 01-C-1429, 2002 U.S. Dist. LEXIS 22917, at *24 (N.D.Ill. Sept. 11, 2002), *rev'd on other grounds*, No. 02-4119 (7th Cir.

27

Mar. 26, 2004); *Freedom Baptist Church* v. *Township of Middletown,* 204 F.Supp.2d 857

(E.D.Pa. 2002). *Cottonwood Christian Center* v. *City of Cypress*, 218 F.Supp.2d 1203, 1221 n.7

(C.D.Cal. 2002) (noting that "RLUIPA would appear to have avoided the flaws of its predecessor

RFRA, and is within Congress's constitutional authority").

Only one court has found the statute unconstitutional. *Elsinore Christian Center* v. *City of Lake Elsinore*, 219 F.Supp.2d 1083 (C.D.Cal. 2003), interlocutory appeal pending, No. 04-55320 (9th Cir.).

Most recently the Seventh Circuit reiterated its prior statement (in *Charles* v. *Verhagen*, 348 F3d 601, 610-611 (7th Cir. 2003)) that RLUIPA is not unconstitutional on its face and referred to it as a "noncontroversial use of section 5" of the Fourteenth Amendment. *Sts. Constantine and Helen Greek Orthodox Church, Inc.* v. *City of New Berlin*, 396 F.2d 895, 897-898 (7th Cir. 2005).

As to the particular claim that RLUIPA violates the establishment clause, the Eleventh Circuit dealt with this issue in detail in *Midrash Sephardi* v. *Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004), finding that application of RLUIPA to land use regulations did not violate the establishment clause. *Id. at 1240-1242.* The standard is the three part test established by the Supreme Court in *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971). *Lemon* requires that a statute have a secular purpose, have a primary effect that neither advances nor inhibits religion, and not excessively entangle government with religion. *Id. at 612-613.* RLUIPA meets these tests. It is "a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their mission." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints* v. *Amos*, 483 U.S. 327, 335 (1987)

28

(upholding religious employer's exemption from compliance with Title VII's protection against religious discrimination.) Where "a law's purpose is to alleviate significant government interference with the exercise of religion, that purpose does not violate the Establishment Clause". *Midrash Sephardi, Inc.* at 1241.

Secondly, RLUIPA does not have the primary effect of advancing nor inhibiting religion. In *Amos* the Supreme Court held:

> A law is not unconstitutional simply because it allows churches to advance religion... For a law to have forbidden effects under *Leman*, it must be fair to say that the *government itself* has advanced religion through its own activities and influences.
>
> *Amos, 483 U.S. at 337*

In applying this to RLUIPA, the *Midrash Sephardi, Inc.* court held:

> RLUIPA by mandating *equal*, as opposed to *special* treatment for religious institutions, does not advance religion by making it easier for religious organizations themselves to advance religion.
>
> *Midrash Sephardi, Inc.* at 1241.

Lastly, under *Lemon* the statute must not result in excessive entanglement between Church and State. There can be no issue with RLUIPA on this point. The statute does not require the government to have any role in religion at all, other than to stay out of its way. The government is not asked to sponsor religion or evaluate the merits of religious parties. *See Midrash Sephardi, Inc.* at 1241.

Plaintiff's argument that RLUIPA violates the Fifth and Fourteenth Amendment as "taking" is without any validity or precedent. The Town of Lenox obviously didn't engage in any taking of property from the plaintiffs. There is no precedent whatsoever for the proposition that granting one party a right to use its own property could constitute the taking of another's

property. Indeed, if a "taking" had occurred, the plaintiffs would have to bring an action under state eminent domain law, which they have not done.

## VII.    The Proposed Building Is Not In A Historic District

In their eighth cause of action, Plaintiffs allege that the "Church Buildings" are subject to the restrictions of the Historic District of Lenox. Plaintiffs claim that "the majority of the Church buildings lies within the Historic District" (Complaint, para. 69). They admit, however, that "the proposed hall lies five feet beyond the 150 foot boundary" (Complaint, para. 69). This is merely a variation of the plaintiffs' argument under Count Four where they attempt to treat the new parish hall - a separate building, as if it were an addition to or an expansion of the existing church. The Zoning Board of Appeals dealt with this issue and found:

16.    A portion of St. Ann's Church's property is subject to the Lenox Historic District Bylaw, which provides for a 150' setback from Main Street. The parish hall and cloister are located outside of the Historic District.

19.    St. Ann's agreed to modify its plan by eliminating the cloister structure. As a result of this modification, the parish hall and church are separated by 28 feet ...

21.    The parish hall is a separate building from the church with the elimination of the cloister, it is located outside of the Historic District and is not subject to the Historic District Bylaw.

(Complaint, Exh. A)

Since plaintiffs themselves concede that the parish hall is a separate structure, there is no basis for Count Eight.

30

**VIII.  The Amended Bylaw Renders Counts One, Five, Six and Seven Moot.**

During the pendency of this action, on May 5, 2005, the Lenox Town Meeting amended §9.18 of the *LZB* as follows:

> 9.18.1   Any property located in the Commercial C zone or Residential R-15 zone used primarily for religious purposes shall be exempt from the provisions of this Section 9.18.

St. Ann's of course is located in an R-15 District and is using the property for religious purposes.  As a result, the burdensome and discriminatory provisions of §9.18 have been eliminated, pending the Attorney General's approval of the Bylaw.  This also mans that the proposed parish hall now complies with §9.18 and, therefore, the plaintiffs' claims under Counts One, Five, Six, and Seven are moot, as they depend on the discriminatory provisions of §9.18.

## CONCLUSION

For the reasons stated above, summary judgment should be entered on all counts for the defendants.

THE DEFENDANT, THE ROMAN
CATHOLIC BISHOP OF SPRINGFIELD

Dated:   June 9, 2005

Maurice M. Cahillane, Esq., BBO# 069660
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121

31

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served this 9th day of June, 2005, on all parties, by First Class Mail, postage prepaid, to:

Jerome J. Scully, Esq., Hannon, Lerner, Cowhig, Scully & Bell
184 Main Street, Lee, MA 01238

John R. Gobel, Esq., Gobel & Hollister
106 Wendell Avenue, Pittsfield, MA 01201

Daniel Mintz, Esq.
26 St. Ann's Avenue, Lenox, MA  01240

Maurice M. Cahillane

0417-030458\88084.wpd

32