Robert Hackmann, being duly sworn, deposes and says:

1. My home is located at 34 St. Ann's Avenue in Lenox, Massachusetts. My family and I have enjoyed our peaceful, attractive neighborhood for over 24 years. I am extremely concerned about the harm the currently planned St. Ann's Parish Center would bring to our neighborhood if it were to be constructed. The planned center is essentially a 3500 square foot social hall. It would be in a residential zone and border on the historic district. It would support activities for 150 or more people, would include a public kitchen, handicap bathrooms, and would be positioned in the heart of my neighborhood.

2. Presently church activities are relatively reserved in nature but some services create untenable congestion levels. One really has to drive on St. Ann's avenue or speak with some of the neighbors before they can fully appreciate the current personal safety risks associated with the congestion and the potential for a tragedy should a medical or fire emergency occur. During some services, illegally parked cars prevent neighbors from exiting their homes and prevent access by emergency vehicles.

3. If constructed, the planned Parish Center will contribute to greater, more frequent, and longer duration periods of congestion. The current parking lot's capacity is 44 spaces for a church that can hold 600 people. The Lenox Zoning Board decision to require 50 additional parking spaces will add to the congestion and safety risks will increase.

4. The following six photographs provide an overview of the current parking conditions during significant church events. These conditions are worsened during inclement weather.

5. Photo 1 shows cars illegally parked on the South side of St. Ann's avenue. The car in the right foreground is about 35 feet from the right rear corner of St. Ann's church. The cars parked on the North side of St. Ann's avenue extend back about 400 feet into the residential neighborhood behind the church grounds. There are times when these cars block resident's driveways. The church's 44-space parking lot is filled to overflowing and somewhat visible in the right portion of the photo.



Photo 1 – St. Ann's Avenue Looking East – April 2004

01/s

6. Photo 2 is taken from the rear of St. Ann's property looking West out toward St. Ann's Avenue intersection with Main Street. The rear of St. Ann's church is in the background. Although St. Ann's Avenue passes through St. Ann's property as if it were a driveway, it is a through street. The current parking lot merges with the avenue such that parishioners walk in the street, and children run across it as if it were part of the parking lot and not a public way. When a church event ends, cars leaving the parking lot exit at all different angles and intermingle with pedestrians and other cars traveling to/from their residences. Note that there are no sidewalks and St. Ann's avenue is only about 18 feet wide where the camera took this photo and not quite 21 feet wide at it's widest point.



Photo 2 – St. Ann's Avenue Looking West – April 2004

7. Photo 3 shows the intersection of St. Ann's Avenue and Main Street. The front of St. Ann's church appears to the right. The car illegally parked at the corner creates an extremely hazardous blind spot for drivers entering Main Street from St. Ann's Avenue. A number of neighbors have experienced near miss accidents at this intersection, at least one of which while a traffic control officer was on duty. In May, 2004, a guest at our house had his SUV extensively damaged by a car north bound on Main Street on a Saturday afternoon when he exited St. Ann's Avenue during the hour of the service. The officer had permitted a car to park illegally close to the corner but was absent during the service and thus unable to direct traffic relative to this dangerous situation. My guest had a compromised view of Main Street. Believing there was no oncoming traffic, he pulled out. Only then did he discover the north bound car which was unable to stop in time to avoid hitting my guest's vehicle.

within the church. For many of these center events, participants will likely extend their activities to areas outside the center where their revelry will resonate throughout the neighborhood.

12. I believe that as with the Boston Diocese, the Springfield Diocese will have to suppress (sell off) parishes due to an ever-increasing shortage of priests. This will bring additional parishioners and congestion to the neighborhood well beyond the increases the currently planned center would bring. As Lenox grows, and parishes consolidate, St. Ann's might become a primary south county parish and Easter/Christmas mass levels of congestion could occur on "ordinary" Saturday's and Sunday's.

13. Once constructed, this parish center will exist for generations to come and it will permanently harm the neighborhood. It will eliminate valuable open space, increase noise and congestion, and increase an already hazardous situation.

*[signature: Robert Hackmann]*

Robert Hackmann
34 St. Ann's Avenue
Lenox, MA 01240

Then personally appeared before me the above named and stated that the foregoing was based upon his own knowledge, information and belief; and, so far as upon information and belief, that he believed it to be true.

On this 18th day of July 2005, appeared before me Robert Hackman who provided his Massachusetts Driver's License as identification —

*[signature: Rebecca S. Sorrentino]*

REBECCA S. SORRENTINO
NOTARY PUBLIC
My Commission Expires Nov. 28, 2008

p5/5

Carol Winston, being duly sworn, deposes and says:

1. I reside at 41 Tucker Street, Lenox Massachusetts, and have been a resident of Lenox for 62 years.

2. As a member of St. Ann's Parish for over 60 years I have supported and attended most parish activities. I am familiar with the nature of and general interest in these events, and the locations at which they are held.

3. For 25 of the last 26 years I had been a daily communicant, attending mass every day. All my children and I have received Baptism, Reconciliation, Eucharist, Confirmation and Marriage at St. Ann's. I have collected for Catholic Charities for 30 years, taught and aided Catechism classes for seven years, participated in the Living Rosary as well as Adult Bible Study groups; been a member of the Rosary Society, Catholic Daughters of America, and the after morning mass Rosary prayer group.

4. St. Ann's has operated successfully for many decades and through all my years as an active parishioner. None of the parish activities that I was involved with or familiar with were prevented or burdened by the lack of a St. Ann's parish center.

5. Parish center proponents speak of the parish center as a convenience. At the only parish meeting held to discuss the planned parish center, on March 2, 2003, the building committee co-chair, in answering why not use an alternate location said "if people have to get into their cars to go somewhere else, they go home and not to the event". The uses defined were for providing handicap accessible bathrooms, office space for the director of religious educational services, a meeting hall for 150 people, a meeting place for building, finance and other committees, baptism receptions, communion receptions, pot luck suppers, receiving lines for weddings, and joint parish meetings.

6. Handicap accessible bathrooms have been advertised as the parish's most important need and certainly should be fulfilled. These bathrooms should be provided in St. Ann's church where they will do the most good since at the parish meeting, there was significant concern expressed that locating them in the parish center was impractical due to their relatively remote location.

7. St. Ann's has been performing all these uses without any problems and without a parish center by utilizing its existing space or space in town.

8. St. Ann's rectory has been used for office space and presently has offices for a secretary, the director of religious education, and the pastor. Building committee, finance committee and parish council meetings are held in the rectory or the church. Some meetings are held at a local inn or in someone's home. Larger meetings utilize the Lenox Community Center or Lenox Memorial High School.

9. Most people prefer to hold a Baptism, Communion or a Confirmation reception with family members at their own home or at one of the area's many fine restaurants. Group Communion or Confirmation receptions are normally held during warmer weather and located either on St. Ann's lawn or, in years gone by, at the Knights of Columbus (K of C) hall.

10. Regarding the K of C hall, it was available to St. Ann's for about 10 years. It was three doors down from St. Ann's Church and potluck suppers, card parties, weekly

bingo, Christmas bazaars, and Catechism classes were held there during St. Ann's heyday. During this period St. Ann's had two priests and there were four well attended weekend masses. Today there is one priest, shared with St. Vincent de Paul in Lenoxdale, three less attended weekend masses, and significantly fewer active parishioners. In the late 1980's, interest in these church activities waned. When the Older Service Meals program, that I was involved with, moved to the Community Center, the K of C had no income source to support the building. It was offered to St. Ann's for a parish hall for a nominal sum, but the offer was turned down.

11. Although parish center proponents state that no fund raising activities are planned, I expect this plan will change due to financial difficulties. If the parish center is constructed, these fund raising activities would be devastating to the neighborhood.

12. Other alternatives should be considered. St. Ann's rectory has had meetings involving about 35 people, taking advantage of the large double-door opening between the living room and dining room. With relatively minor modifications, its first floor could hold gatherings for 50 or more people. This would provide for more comfort for those few occasions where more than a dozen or so committee members attend meetings. It would also support baptism receptions and the coffee hours that are presently held in the church lobby. The five rooms on the second floor and the sizable attic space could be renovated to provide a suitable apartment for the pastor and a visiting priest.

13. In addition, these rectory modifications would also allow St. Ann's rectory to be used for Bible Study and Rosary Society gatherings should these presently dormant activities ever startup again. This doesn't seem likely as initiatives to start a morning bible study group, including four to six weeks of advertising, led to sparse turnouts and the activity ultimately was cancelled after no more than a few months.

14. If necessary, the St. Vincent de Paul rectory could be used as a residence for more than one priest if the St. Ann's pastor felt inconvenienced by meetings on the first floor of St. Ann's 11-12 room rectory.

_Carol Winston_
Carol Winston
41 Tucker Street
Lenox, MA 01240

Then personally appeared before me the above named *Carol Winston* and stated that the foregoing was based upon her own knowledge, information and belief; and, so far as upon information and belief, that she believed it to be true.

_Helen P. [signature]_
My commission expires June 27, 2008

D

1

TOWN OF LENOX

ZONING BOARD OF APPEALS

In The Matter Of:

The Appeal Brought By
Vernon Kohlenberger and Others

PARTIAL TRANSCRIPT (Tape 1, Side 1) OF THE MEETING HELD WITH THE LENOX ZONING BOARD OF APPEALS AT LENOX TOWN HALL, LENOX, MASSACHUSETTS AT 7:00 P.M. ON JANUARY 21, 2004.

TRANSCRIBED BY:

BRENDA L. BIGELOW

COURT REPORTER

73 STODDARD AVENUE

PITTSFIELD, MA  01201

TEL: (413) 443-7382

1  application, plans, and supporting materials
2  submitted by St. Ann's Church are available for
3  inspection at the office of the Lenox Town Clerk
4  during regular office hours.
5              ARLENE SCHIFF:  At this time I'd
6  like to ask Assistant Building Inspector Edwin May
7  to present his reasons for granting the permit.  If
8  you could come up to the microphone.
9              AUDIENCE:  (Inaudible) -- please use
10 the microphone.
11             ARLENE SCHIFF:  Okay.
12             EDWIN MAY:  Good evening, and thank
13 you for inviting me.  My name is Ed May.  I'm the
14 Assistant Building Inspector in Lenox.
15             AUDIENCE:  We can't hear you.
16             ARLENE SCHIFF:  They can't hear you.
17 Maybe if you hold that up a little.
18             EDWIN MAY:  I believe it's on.  How
19 is that?
20             AUDIENCE:  We can't hear you.
21 Speaker closer.
22             EDWIN MAY:  What was the decision --
23             ARLENE SCHIFF:  The reasons why you
24 felt you could grant the permit.
25             EDWIN MAY:  There was only one

1  reason why I couldn't.
2      AUDIENCE: We still can't hear you.
3      EDWIN MAY: There was only one
4  reason why I couldn't. Attorney Dubendorf
5  explained to me that there was a federal statute
6  the allowed for me to issue the permit.
7      AUDIENCE: We can't hear you.
8      ARLENE SCHIFF: Thank you. What he
9  said was that town counsel -- excuse me.
10      AUDIENCE: Please, we cannot hear.
11  I don't think the sound system is working.
12      ARLENE SCHIFF: The microphones are
13  on. I will tell you what he said. He said that he
14  issued the permit based on the fact that town
15  counsel, Don Dubendorf, told him that that was the
16  appropriate thing to do, given the religious -- the
17  RLUIPA Act or whatever, the Religious Land Use and
18  Institutionalized Persons Act of 2000.
19      EDWIN MAY: Yes.
20      ARLENE SCHIFF: Okay. Thank you.
21  At this time we'll ask representatives of St. Ann's
22  Church to present their testimony in support of the
23  granted building permit.
24      PHIL HELLER: For your record, my
25  name is Phil Heller, and I'm the attorney on behalf

E



F

James Biancolo, being duly sworn, deposes and says:

1. I live at 136 Main Street Lenox, Massachusetts and have been a Lenox resident for 34 years.

2. In their decision filed on March 5, 2004 upholding the building permit for the proposed parish center, the Lenox Zoning Board of Appeals (ZBA) stipulated that "Parking for the parish hall should conform to the zoning bylaw, and therefore St. Ann Church shall provide fifty (50) additional parking spaces for the parish hall".

3. The 50 additional spaces cannot be added to St. Ann's lots without violating the zoning bylaw. Section 10.11.2.4.1(b) states "No on-grade open parking space or driveway shall be located within 30 feet of any side or rear property line".

4. The attached site plan includes a proposal for adding the 50 spaces. The plan indicates that of the 25 spaces to be located behind the church on the northern side of St. Ann's Avenue, one space is right on the side property line, four spaces are within five feet of the side property line and seven spaces are within 20 feet of the side property line. In addition, three spaces are within five feet of the rear property line. Of the 25 spaces to be located on the church property on the southern side of St. Ann's Ave, seven of the spaces are within ten feet of the side yard property line and seven spaces are within 17 feet of the side yard property line.

5. Additional bylaw parking requirements cover required driveway widths (Section 10.11.2.3.2(a)) and the necessary parking lot area excluding driveways (Section 10.4). This data indicates there are no alternate parking configurations that will meet the bylaw.

6. In their decision filed on March 5, 2004 the ZBA also found that "The additional 50 parking spaces as required by the Zoning Board of Appeals will address the abutters' concern about traffic congestion on St. Ann's Avenue".

7. The requirement of additional parking was made by the ZBA during the decision phase of the hearing. There was no opportunity for public comment. There was never any discussion with abutters to determine if adding 50 spaces would address our concerns. The additional parking is an ill-conceived plan that could increase, rather than decrease, the safety hazards that already exist on St. Ann's Avenue.

*James Biancolo*

James Biancolo
136 Main Street
Lenox, MA 01240

Then personally appeared before me the above named and stated that the foregoing was based upon his own knowledge, information and belief; and, so far as upon information and belief, that he believed it to be true.

July 18, 05    *Phyllis T. Weaver*
               Notary Public

Phyllis T. Weaver
NOTARY PUBLIC
My commission expires Mar. 31, 2006

