UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL MINTZ, ANDREA WINTER,            )
JAMES BIANCOLO AND SANDRA BIANCOLO,     )
ANN PHILLIPS, STEVEN BAUM,              )
CAROL WINSTON, VERNON KOHLENBERGER      )
AND DONNA KOHLENBERGER,                 )
LAWRENCE WOLFE AND PAMELA WOLFE,        )
CRAIG PEHLERT AND MELISSA PEHLERT       )
AND ROBERT HACKMANN AND                 )
JANE HACKMANN,                          )
                    Plaintiffs          )
                                        )
v.                                      )
                                        )        Civil Action No.  04-10809-MAP
                                        )
THE ROMAN CATHOLIC BISHOP OF            )
SPRINGFIELD, THOMAS L. DUPRE, BISHOP;   )
ARLENE D. SCHIFF, CLIFFORD SNYDER,      )
HAROLD BROWN, JEFF HALL AND             )
NED DOUGLAS AND EDWIN MAY,              )
                    Defendants          )

# MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiffs have moved for Summary Judgment by Cross Motion and have opposed the

defendants' Motion for Summary Judgment on the identical grounds.  Defendants submit this

brief in opposition to the Cross Motion for Summary Judgment.

**Facts In Dispute**

Plaintiffs indicate that they accept almost all of the defendants' statement of material facts

not in dispute.  On the few matters they dispute, they do not present any competent and material

1

counter evidence. Plaintiffs dispute defendants' statement #6, but present no evidence to dispute Fr. Waitekus' testimony. Plaintiffs dispute defendants' statement #12, but again present no evidence to dispute this, a fact which has been presented in plans to the Town and is the basis for the permit. (Def. Exh. A, para. 12). Again, without explanation plaintiffs dispute defendants' statement #15, which is plainly stated in the zoning bylaw itself. The only other disputed statement is #27, which presumably is just a disagreement as to the characterization of the amendment.

Plaintiffs' counter statement contains some items that the defendant does not dispute: counter statements 3, 6, 7 and 9. Several other items are disputed: 1, 2, 4, and 10, but are in no way material. For instance, the existence of parking problems at the present church are not an issue here, both because the case involves a separate parish hall required to operate at a separate time than the church, and involves a ZBA decision which requires extra parking (Def. Exh. 3A). Counter statement 10 is not a material point, but a legal argument.

Defendants also dispute counter statement #8, without conceding that it would be material. The building in question is no longer available, was used some 15 years ago, and there is no reason to believe that the affidavit is based on competent testimony anyway since the individual had no position of authority at the parish (Def. Exh. 4, Ans. To Inter. #5).

Notably, plaintiffs do not contest the fact that all the administrative functions necessary to run the church are presently performed either in the pastor's residence, or at an outside location (Defendants' statements 8, 9, and 10).

Plaintiffs make various references to (without presenting them as material facts not in dispute) traffic and parking problems *at the church*. Even if this were true, it is an issue that is

not relevant to the dispute. The bylaws contain restrictions on parking and safety concerns. The only issue for the court is whether the bylaw is being violated. In any event, any such problems are limited to services held once per week for brief periods of time (Def. Exh. 4, Ans. To Inter. #8) and the new hall is required to not operate at the same time as the church (Def. Exh. 3A).

Plaintiffs contend in their statement of facts that the church "circumvented" the local review process and received "favorable treatment". They present no evidence to support this notion. There is no procedure under the Town bylaws or state law that the church failed to follow and plaintiffs do not point to any. The Church, as with any other landowner, was entitled to apply for a building permit. Under 42 U.S.C. §2000cc-3(e), the building inspector was acting lawfully in providing that permit even if the local discriminatory bylaw was violated. Plaintiffs were still able to mount a timely challenge and had their issue heard before the ZBA. In any event, plaintiffs make no legal claim on this issue.

# ARGUMENT

I. **Plaintiffs Present No Grounds For Summary Judgment Or For The Denial Of The Defendants' Motion**

A. **RLUPIA Was Properly Applied In This Case**

Plaintiffs correctly assert that this case turns on the applicability of RLUPIA. Defendants agree, that without the applicability of RLUPIA, some provisions of the bylaws would have been violated.[1]

---

[1]Defendants are unsure of the meaning of plaintiffs' footnote 5 on page 7 of the brief. The parish hall complies with the setback and height requirements of the bylaw, regardless of what RLUPIA says. As argued in defendants' main brief, the parish hall is not an "enlargment" of a building, it is a separate building. Plaintiffs present no reason to dispute this.

3

Plaintiffs first argue that RLUPIA was not intended to apply to the present case because St. Ann is a "flourishing church" over "90 years old", and Congress saw a pattern of discrimination against "small and unfamiliar denominations" (Brief p. 8). This argument has no merit. The statute is in no way limited to small and unfamiliar denominations. It does not state anywhere that it only applied to "newer" churches. That Congress wanted to prohibit discrimination against small or new denominations is hardly evidence of a desire not to protect other religious exercise. Indeed, an attempt by Congress to protect some denominations or religions, but not others, would likely violate the First Amendment. The statute itself makes no such distinctions and clearly applies to all religious exercises. *42 U.S.C. §2000cc-5(7)*. The plaintiffs' assertion that the statute should only apply to a "core aspect" - the "ability to worship" - is specifically repudiated by the statute itself:

> The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to a system of religious belief."

> *42 U.S.C. §2000cc-5(7)(A)*

## B.    Defendants Have Demonstrated A Substantial Burden On Religious Exercise

Plaintiffs incorrectly imply on page 7 of their brief that the church must show a substantial burden on the exercise of religion in order to proceed with consideration of other parts of the statute. This is not so and it is clear from the face of the statute that both substantial burdens *and* discrimination are prohibited by RLUPIA. *42 U.S.C. §2000cc*. St. Ann, therefore, is not trying to establish a "prima facie" case by arguing substantial burden - both substantial burdens and discrimination are prohibited independently.

4

Defendants do assert, and plaintiffs cannot effectively refute, that the operation of a church and, therefore, religious exercise necessarily involves more than worship alone and that ancillary administrative space is protected by the statute. Plaintiffs do not refute the numerous cases cited by the defendant that involve more than worship as religious exercise.[2]

Plaintiffs also argue that the denial of the proposed parish hall is a "mere inconvenience". Having space to run the church administration, as well as the numerous other functions which the church seeks to use the building for (meetings, functions after services) could hardly be described mere convenience. It would be similar to arguing that the denial of a clerk's office to the court was a mere inconvenience since the core functions were all occurring in the courtroom.

The cases cited by Plaintiffs involve materially different circumstances. The situation in *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints* v. *City of West Linn*, 338 Ore. 453, 111 P.3d 1123 (2005) was quite different from this case. There the court emphasized that the church was only being asked to make some modest changes to its proposal in order to obtain approval. *Id.* at 467. There was no issue as here, of the church being able to ultimately build the meeting house. Notably, the building in that case was about four

---

[2] *First Assembly of God of Naples, Fla, Inc.* v. *Collier County*, 20 F.3d 419, 422 (11th Cir. 1994) ("Sheltering the homeless is an essential aspect of the Christian religion."), *Stuart Circle Parish* v. *Bd. Of Zoning Appeals*, 946 F. Supp. 1225, 1236 (E.D. Va 1996) ("feeding the poor constitutes a central tenet of the religion practiced at the six churches involved in the meal ministry."), *Young Israel Organization*, 133 N.E.2d at 176 (meeting rooms, club rooms, and classrooms), *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints* v. *Ashton*, 448 P.2d 185, 189 (Idaho 1968) (use of a field for recreational purposes permissible), *Board of Zoning Appeals* v. *New Testament Bible Church, Inc.*, 411 N.E.2d 681, 685 (Ind. Ct. App. 1980) ("If one is entitled to build a church, he may not be denied the opportunity to build accessaries as well.") (*See also Alpine Christian Fellowship* v. *County Commissioners of Pitlein Co.*, 870 F. Supp. 991 (D. Col. 1994) (unconstitutional to deny permit for religious school in church building even though schools not permitted in the zone.)

5

times the size of St. Ann's proposal (16,558 sq. ft) and would have occupied 2.02 acres of a 5.64 acre tract. *Id.* at 547.

Likewise, in *Midrash Sephardi, Inc.* v. *Town of Surfside*; 366 F.3d 1214 (11th Cir. 2004), the issue of "substantial burden" was walking a few extra blocks. *Id.* at 1227. However, the court still determined that the regulation at issue violated RLUPIA's non-discrimination provisions. *Id.* at 1230-1235.

Plaintiffs' other citations are all similar. The present case does not involve a regulation which makes building a parish hall slightly less convenient or more expensive. §9.18 would prohibit the hall altogther.

**C.    RLUPIA Cannot Be Complied With By Forcing The Church Hall To Move Elsewhere**

Plaintiffs argue that St. Ann's is in the same situation as churches or other entities who desire a particular location but are unable to use it because of zoning laws. This misses the point of RLUPIA. The purpose of the statute is to prevent local government from burdening religious exercise and for discrimination against religious entities on the property that they own or seek to purchase. St. Ann's is not in this predicament because it faces the same zoning situation as any other person or entity. It faces this situation because it cannot build on its own property precisely because of restrictions aimed only at religious entities. The primary restriction - the combination of land percentage use and buffer requirements - are not common requirements throughout the Town of Lenox. Consequently, accepting the argument that St. Ann should seek some property somewhere else would be a refusal to apply RLUPIA to a religious entity with

6

respect to its own land, a proposition that obviously has no support in the statute. Finding another property that meets the requirements of §9.18 would be expensive, time consuming and most assuredly more than an inconvenience. It would be highly unusual to say the least, for a law to effectively require a religious operation to physically separate its administrative functions from the church. In addition to this, and quite distinct from the cases cited by the plaintiff, St. Ann would face the same problems with any other piece of land in Lenox as they do with their own. To satisfy §9.18, St. Ann's would, at a minimum, have to find and purchase vacant property with *twenty-five* times as much surrounding land as the building would occupy.

Plaintiffs assert that St. Ann could build on a different part of its property - adjacent to Main Street. This cannot be. Any such building would face all the same restrictions under §9.18. It still could not comply with the 4% land use requirement. It would also require the elimination of a small shrine that has both religious and aesthetic significance.

## D.    Plaintiffs Cannot Refute The Discriminatory Nature Of The Bylaws.

Plaintiffs assert that §9.18, even though it contains extremely restrictive provisions that apply *only* to religious institutions and private educational institutions, is not "discriminatory". Plaintiffs argue that this is so because §9.18 allows a church "as right use."[3] This is based on the assertion that a requirement of a special permit is "always" more restrictive "than as of right use. There is no authority cited to support this sweeping generalization - nor is it logical. A special permit requirement may or may not end up being restrictive at all. It provides a certain level of

---

[3] Oddly enough, the plaintiffs also argue that St. Ann should have been required to seek a special permit under the bylaws, as an expansion of a non-conforming use. Plaintiffs cannot have it both ways.

discretion to the governing authority, but whether that is discriminatory *or* restrictive depends upon its application in different circumstances. Permits could only *always* be more discriminatory if they were "always" denied. The argument is silly in another way: it really is a statement that St. Ann only faces some restrictions, but not all of the possible restrictions there could be. This is meaningless in a discrimination context because there is no other entity or person who faces all possible restrictions under the bylaw.

The argument that some other uses - such as libraries and museums, have permit requirements that St. Ann's does not, ignores the fact that there are multiple uses in every district of varying degrees of intensity and of different natures, which have use as of right (Def. Exh. 7, #6). Every district permits some uses as of right. But no entity, similar or not, faces the combination of restrictions placed on religious institutions - and those restrictions particularly the 4% land use requirement, go far beyond that required of anyone else. This is the definition of discrimination.

Plaintiffs argue that §9.18 of the bylaw furthers a compelling government interest and is the least restrictive means of doing so. Here again the plaintiffs justify §9.18 on grounds that special permits are more restrictive than any other kind of regulation, which, as noted above, is both illogical, and in this instance disingenuous, since plaintiffs seek special permit treatment for the church anyway. Plaintiffs contend that anything other than a special permit is the "least restrictive" means even though the requirements of §9.18 would flat out prohibit any chance of a parish hall, while a special permit requirement, if it existed in this situation, would make it possible.

It is impossible to argue that public safety requires the restrictions of §9.18, where there

8

are numerous other uses within the jurisdiction, with similar safety issues, which are not called upon to meet the same standard.

E.     **There Are No Grounds Or Jurisdiction Under RLUPIA Or The Bylaw To Remand This Matter To The ZBA**

Plaintiffs argue that if §9.18 does violate RLUPIA, the court should nonetheless remand the case back to the ZBA.  The basis for this it seems, is the plaintiffs' assertion that St. Ann's has somehow been given favorable treatment by not being subjected to what are manifestly discriminatory and highly restrictive zoning provisions.  Plaintiffs argue as if there were no restrictions on St. Ann's at all as a result of the application of RLUPIA when, in reality, RLUPIA merely eliminates certain highly discriminatory and burdensome requirements which the Town itself has since lifted.  All of the other provisions of the bylaw still apply to St. Ann and are being followed.  There is no required process that St. Ann has been exempted from.  If it is now being permitted to act as any other property owner could, that is the desired result of the elimination of discriminatory and restrictive provisions.  RLUPIA's enforcement here has not relieved the church from having to apply for necessary variances or permits, because there is no provision of the bylaw which would require such application in the absence of §9.18's discriminatory and burdensome provisions.[4]

Plaintiffs further argument that RLUPIA should be ignored on grounds that it is less favorable to the church than the Massachusetts Dover Amendment has been addressed in the

---

[4]As noted in the defendants' main brief, the assertion that a variance is a reasonable option open to St. Ann is disingenuous at least as the legal requirement for a variance in Massachusetts are extremely rare and almost impossible to achieve.

defendants' main brief, i.e., while §9.18 does violate the Dover Amendment, that in no way precludes application of RLUPIA. RLUPIA is not pre-empting the Dover Amendment: the issue under RUPIA is whether the Dover Amendment is so much more protective than RLUPIA that it should be preferred. *42 U.S.C. §2000cc-3(h).* Clearly, when the plaintiffs seek to use the Dover Amendment to revive §9.18 and defeat the project, they cannot reasonably argue that it is more protective. The protection the Dover Amendment affords is different, not equal or superior.

**F.**     **The Court Should Not Fail To Decide The Case Because There Is A Constitutional Issue**

With respect to their challenge to the constitutionality of the statute, the plaintiffs, who raised the issue of constitutionality in the first place, make a remarkable and unprecedented argument: that the court should not rule on the issue because there is a lack of complete consensus on it (although admitting that the vast majority of courts have held RLUPIA constitutional). Plaintiffs, whose interests lie in delaying this project, amazingly asked the court not to rule on the very issue that they have raised. If it is not appropriate to rule on the constitutionality of the statute, the plaintiffs should not have brought that count. If a District Court's obligation were to wait for a higher court ruling (presumably a Supreme Court ruling) before acting, how could any such issue ever reach a higher court if District Courts deferred? This court has jurisdiction over the issue. Plaintiffs do not now raise any new substantive reason to defer. The court should follow the actions of a majority of courts and uphold the statute.

10

## G.    The Amended Bylaw Should Be Given Affect

The plaintiffs have argued that the amendment to the Town of Lenox's bylaw, which eliminates the discriminatory provision of §9.18, should not affect the outcome of this case because it is "irrelevant" to the legality of this specific permit. There is, however, nothing in the bylaw or state law which would support this proposition. This is not a situation where St. Ann's had applied for and been denied a permit under a provision that was later repealed. Under those circumstances, St. Ann would still have to go ahead and get a permit. However, St. Ann's does presently hold a permit. If the law changes in its favor, it's only affect is to moot the arguments that the plaintiffs have raised in trying to deny the permit. It would not have an affect on the permit itself. The suggestion on the part of the plaintiffs that St. Ann's should now withdraw its prior permit and allow the dismissal of this action is simply a strategy for giving the plaintiffs an unwarranted opportunity to achieve delay in this project for the strange reason that the bylaw now favors St. Ann. This is not a logical result. The claims are, in fact, mooted by the amended bylaw and the court should so recognize this.

THE DEFENDANT, THE ROMAN
CATHOLIC BISHOP OF SPRINGFIELD

Dated:   August 22, 2005

Maurice M. Cahillane, Esq., BBO# 069660
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served this 22nd day of August, 2005, on all parties, by First Class Mail, postage prepaid, to:

Jerome J. Scully, Esq., Hannon, Lerner, Cowhig, Scully & Bell
184 Main Street, Lee, MA 01238

John R. Gobel, Esq., Gobel & Hollister
106 Wendell Avenue, Pittsfield, MA 01201

Daniel Mintz, Esq.
26 St. Ann's Avenue, Lenox, MA 01240

Maurice M. Cahillane

0417-030458\96531.wpd

12

Exhibit 4

ALL–STATE® LEGAL  800-222-0510     FORM 11     RECYCLED

procedures.

c.    Identify all documents which contain information concerning such policies.

**RESPONSE:**    None.

**INTERROGATORY 4:**    For any and all locations in Berkshire County where Defendant holds or has held Church related functions or activities:

a.    Identify each such location.

b.    Identify and describe the nature of the interest in such locations.

c.    Identify all documents relating to the use, operation, maintenance and sale of each such location.

**RESPONSE:**    Defendant objects to this interrogatory as irrelevant and overly burdensome. Defendant operates numerous parishes in Berkshire County (all described in Exhibit A). These parishes do engage in and have engaged in multiple activities in pursuit of the defendants mission on a daily basis for many decades. To describe all of their functions and activities and produce all related documents would be an impossible task.

**INTERROGATORY 5:**    With regard to the property commonly known as the "Knights of Columbus" building in the Town of Lenox, identify and describe:

a.    All activities held at such location.

b.    The period during which it was used by Defendant or by St. Ann Church.

c.    Any discussions regarding the purchase, sale or lease of such facility.

d.    All documents relating to the use, operation, maintenance, purchase and/or sale of this facility.

**RESPONSE:**    To the best of defendant's knowledge, there is not presently a Knights of Columbus building in the Town of Lenox. Defendant believes there was a Knights of Columbus building which was sold approximately 15 years ago. St. Ann Church has not utilized such a building in recent years and could not accurately describe any prior use with accuracy.

**INTERROGATORY 6:**    Identify the names of all members of the Building Committee, Finance Committee and Parish council for St. Ann Church from January 1, 2000 to date and identify, provide and describe:

3

Fr. Christopher Waitekus
Edward Bride
Patricia Archey
Rose Fitzgerald-Casey
William Leary
Rev. George Keator
Steven Sweeny
Francis Morley
Christine Cooney
Michael Cooney
Joan Hobbs
May Ellen Leahy
Mark Leahy
Nora O'Brien
Michael Kelly
Claire Mooney
Dr. Paula Blagg
Maureen Jarvis
Joseph Cacciola (ex officio)
Denis Flynn (ex officio)

The duties of the council are described in the attached booklet.

Defendant objects to subsections (b) and (c) as vague, irrelevant and overly burdensome.

**INTERROGATORY 7:**    Identify and describe the financial operations of St. Ann Church, including all budgets, fundraising activities, pledges and bequests, capital campaigns, statements of income and expense for each year from January 1, 2000 to the present, including, without limitation, the number of weekly collection envelopes distributed and returned.  Identify and describe any and all documents relating to such operations.

**RESPONSE:**    Defendant objects to the interrogatory as irrelevant and beyond the scope of discovery.

**INTERROGATORY 8:**    With respect to the use of St. Ann Church from January 1, 2000 to the present, please identify, describe and provide the following information:

a.    The type and number of religious services held in the Church, the duration of each type of service and an estimate of the number of attendees at each type of service.

b.    The type and number of regular meetings held in the Church, the duration of each meeting and an estimate of the number of attendees at each meeting.

5

c.    Any Church events, receptions or functions which are not covered by categories "a" and "b" above.

d.    Any documents related to the use of St. Ann Church by members and nonmembers, including but not limited to calendars, appointment books and schedules.

e.    Any documents made available to members of St. Ann Church relating to activities of St. Ann Church, including but not limited to all newsletters published by St. Ann Church or Defendant.

**RESPONSE:**    a.    Defendant objects to an inquiry into the number and type of religious services held in the church as irrelevant and unconstitutional under the First Amendment. Without waiving the objection, the defendant can state that regular masses are held in accordance with the schedules in Exhibit A (p. 113). The church does not keep attendance.

b.    Meetings are often held outside the parish property. Some meetings are held in the rectory, but space is quite limited. The parish council usually meets at a local inn - most recently the Summer White House. CCD is held at the local high school and grade school.

c.    The Church holds a St. Patrick's Day party at Eastover. Last year the attendance was approximately 150. The Church usually holds a lawn party on its grounds, under a tent.

d.    The defendant objects to this interrogatory as vague, irrelevant and overly burdensome.

e.    The defendant objects to this interrogatory as vague, irrelevant and overly burdensome.

**INTERROGATORY 9:**    With respect to any St. Ann Church meeting, event, reception or function not held on St. Ann Church property, identify and describe:

a.    Each such meeting, event, reception or function.

b.    The number of attendees.

c.    The location and duration.

d.    Whether such meeting, event, reception, or function was regularly scheduled, and if so, how often.

e.    Any documents related to any such meeting, event, reception, or function including but not limited to: newsletters, calendars, appointment books, schedules, memoranda and correspondence.

6

## LEEDS
### ST. CATHERINE OF
### ALEXANDRIA PARISH

Established 1911

Church: 195 Main St., 01053
Rectory: 195 Main St., 01053-0312
Tel. 584-1726
Fax: 584-2208
E-mail: stcathleeds@aol.com
Pastor: Rev. Donald Lapointe
E-mail: backpack1@msn.com
Secretary: Sheri Cone

**Mass Schedule:**
Sat. 4:00 p.m. (St. Mary's, Haydenville)
Sun. 8:00 a.m.(St. Mary's)
    10:00 a.m. (St. Catherine's)
Daily 8:30 a.m. Tues. - Thurs. (St. Mary's)
Holy Day 8:30 a.m. (St. Mary's)
    7:00 p.m. (St. Catherine's)
Holy Days: 8:30 a.m. (St. Mary's)
    7:00 p.m. (St. Catherine's)
St. Jude Novena Mon. 7:00 p.m.
    (St. Catherine's)

**Reconciliation Schedule:** By request

## LENOX
### ST. ANN PARISH

Established 1891

Church: 132 Main St., 01240-2395
Rectory: 134 Main St., 01240-2395
Tel. 637-0157
Fax: 637-2945
Pastor: Rev. Christopher J. Waitekus
Deacon:
    Rev. Mr. George Keator
    36 Schermerhorn Park
    Box 693, 01240-0693
    Tel. 637-1146
Secretary: Deborah A. Kuni
Religious Education: Michelle Maggio
    Tel. 637-4027
    Fax: 637-2945

**Mass Schedule:**
Sat. 4:00 p.m.
Sun. 9:00 a.m., 11:00 a.m.
Daily 7:00 a.m. Mon. - Fri.
Eve of Holy Day 5:30 p.m.
Holy Day 7:00 a.m.

**Reconciliation Schedule:**
Sat. 3:00 p.m., or by appointment.

**Facilities:**
St. Ann Cemetery
Housatonic Street
Tel. 637-0157

*Church side entrance is
handicapped accessible.*

## LENOX DALE
### ST. VINCENT DE PAUL PARISH

Established 1904

Church: 29 Crystal St., 01242
Rectory: 29 Crystal St., 01242
Mailing address:
    P.O. Box 259, 01242-0259
Tel. 637-0157 (St. Ann)
Pastor: Rev. Christopher J. Waitekus
In residence:
    Rev. John J. Bonzagni
    P.O. Box 363, 01242-0363
    Tel. 637-1085
Secretary: Mary Corcoran
Religious Education: Frances Sorrentino

**Mass Schedule:**
Sat. 5:30 p.m.
Holy Day 5:30 p.m.

**Reconciliation Schedule:**
Sat. after 5:30 p.m. Mass

113